BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE CEMENT AND CONCRETE ANTITRUST ) DOCKET NO. 296
LITIGATION )

OPINION AND ORDER

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD,
EDWIN A. ROBSON, JOSEPH S. LORD, III*, STANLEY A. WEIGEL,
ANDREW A. CAFFREY, AND ROY W. HARPER*, JUDGES OF THE PANEL.

PER CURIAM

This litigation consists of 21 actions pending in two federal districts: twenty in the District of Arizona and one in the Central District of California.

On September 23, 1976, following a year-long investigation, the Arizona Attorney General filed a complaint in the District of Arizona charging the Portland Cement Association (PCA) (a trade group composed of over 40 major cement producers), the Arizona Rock Products Association (ARPA) (a trade group whose members include Arizona grout, rock products and ready-mix concrete producers), five cement companies and thirteen ready-mix concrete companies with violations of Section 1 of the Sherman Act and Arizona's version of the Uniform Antitrust Act [1]/. Essentially, PCA and the cement companies are alleged to have combined and conspired since

---

*Judges Lord and Harper took no part in the consideration or decision of this matter.
1/Ariz. Rev. Stat. Ann. §44-1402.

1958 to maintain, stabilize, and fix the price for cement sold within Arizona; and ARPA, one cement company, and the ready-mix concrete companies are alleged to have acted likewise since at least 1951 with respect to the sale of ready-mix concrete, grout and rock products within Arizona. Ready-mix concrete is differentiated from cement in that the former is a product which is the result of a mixture of cement with other materials such as sand, limestone and water.

Since the filing of the Arizona Attorney General's action, nineteen additional actions have been filed in the District of Arizona alleging combinations and conspiracies in the cement and ready-mix concrete industries. Seven of these actions have been brought against both cement and ready-mix concrete defendants. The allegations against the ready-mix concrete defendants in these seven actions are limited to charges of antitrust violations within Arizona. With respect to the charges brought against the cement defendants in these seven actions, five complaints allege nationwide violations and two complaints allege violations within Arizona. The remaining twelve actions have been brought against cement industry defendants only. Of these actions, seven allege nationwide violations, two allege violations within Arizona, one alleges violations within Arizona and California, one

alleges violations within Colorado, and one alleges violations within Oregon. The PCA and five cement companies are each defendants in nineteen or more actions in this litigation, including the California action. Thirty-five other cement companies are each currently named as defendants in eleven or more actions, while ARPA and thirteen ready-mix companies are each defendants in five or more actions.

Seventeen of the actions pending in the District of Arizona have been filed as class actions. The various classes sought to be represented in these actions range from specific groupings such as building materials dealers, general building and paving contractors, or subcontractors engaged in the installation of floor and wall tile, to broad geographic classifications embracing purchasers within the State of Arizona, within the State of Colorado, within the State of Oregon, within the State of Texas, or within the entire United States.

The California action has been brought as a class action by the State of California on behalf of all political subdivisions and public agencies and districts within California which have built projects or structures constructed in whole or in part of cement. The defendants, PCA, National Association of Credit Management, Inc., and nine cement companies, are charged with violating Section 1 of the

Sherman Act by engaging, since at least 1970, in a combination and conspiracy to fix, maintain and stabilize prices for cement sold within the State of California. The defendants are also charged with violations of the Cartwright Act[2]/, California's antitrust statute.

The State of California has moved the Panel for an order pursuant to 28 U.S.C. §1407 transferring the California action to the District of Arizona for coordinated or consolidated pretrial proceedings with the actions pending there. Plaintiffs in the Arizona actions (the Arizona plaintiffs) support California's motion. Thirty-nine defendants agree that transfer is desirable but cross-move that the Northern District of Illinois, the Northern District of Texas, some other more centrally located forum, or the Central District of California, be selected as the transferee district. Three defendants oppose transfer and two defendants request that transfer be deferred pending the outcome of certain jurisdictional motions in the Arizona actions.

We find that these actions involve common questions of fact and that transfer of the California action to the District of Arizona pursuant to Section 1407 for coordinated or consolidated pretrial proceedings with the actions pending

---

2/California Business and Professions Code §§16720 et seq.

there will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Some defendants urge that there are really three separate conspiracies (local Arizona concrete, local Arizona cement, and national cement) alleged in the actions before us. They contend that the national conspiracy actions bear no nexus to the Arizona Attorney General's action and others limited to claims arising from conduct within the State of Arizona. These defendants thus contend that there are insufficient common questions of fact to warrant centralization of the national conspiracy actions, including the California action, in the same district as the Arizona conspiracy actions.

We are persuaded, however, that all actions in this litigation belong in a single district for pretrial. Cement industry defendants in all actions are charged with agreeing upon delivered prices for cement, establishing uniform freight allowances and credit terms, and allocating territories and customers. The fact that the range of discovery may be broader in those actions alleging conspiracies in areas encompassing or outside the State of Arizona does not negate the substantial amount of discovery shared by all actions concerning the existence, scope and effect of conspiratorial activity in the cement industry. See In re Sugar Industry Antitrust Litigation, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975). At best, defendants' concern

can be viewed as one involving the degree and manner of coordination of pretrial activities. And that is a matter to be addressed to the transferee judge, not the Panel. In re Equity Funding Corporation of America Securities Litigation, 375 F. Supp. 1378, 1384-85 (J.P.M.L. 1974). Furthermore, since duplicating or overlapping classes are sought in most of the actions, transfer to a single district is desirable in order to avoid the possibility of inconsistent class determinations. See In re Sugar Industry Antitrust Litigation, supra, 395 F. Supp. at 1273.

Many defendants argue that the plaintiffs are misusing Section 1407. These defendants depict a scenario in which plaintiffs have agreed to file all actions but one in the District of Arizona and then seek transfer of the California action to the District of Arizona before actions or claims in the Arizona forum are either transferred to other federal districts under 28 U.S.C. §§1404 or 1406, or dismissed and subsequently refiled in other federal districts, because the Arizona district court lacks jurisdiction over some of the parties. These defendants contend that the plaintiffs have relied on the Panel's traditional reluctance to transfer actions to a district in which no related action is pending, in order to force a quick choice between the District of Arizona and the Central District of California.

They urge the Panel to transfer the litigation elsewhere or defer the determination on the question of transfer until the anticipated filing of actions in different federal districts has occurred and thereby provided the Panel with a broader choice of possible transferee districts.

Included in the other contentions raised by defendants in opposition to transfer of this litigation to the District of Arizona are that that district is not convenient for purposes of discovery because no cement company defendant is headquartered in Arizona, that a more centrally located forum is desirable, and that the Arizona district court dockets are already suffering from a backlog of actions.

On balance, we are persuaded that the District of Arizona is the most appropriate transferee forum for this litigation. Arizona is the location of the year-long investigation which preceded the filing of any actions in this litigation. It is not surprising, therefore, that the overwhelming majority of plaintiffs would elect to file suit in the federal district in which the files and documents generated by the Arizona Attorney General's investigation are located. In a related context, we have noted that the situs of investigative materials assembled by grand juries is a factor contributing to the choice of a transferee district. <u>In re Sugar Industry Antitrust</u>

Litigation, supra, 395 F. Supp. at 1274. Moreover, the familiarity which Judge Muecke has developed with this litigation as a result of the pretrial proceedings that have already been conducted in the actions pending in the District of Arizona weighs significantly in favor of that district as the transferee forum. See In re Griseofulvin Antitrust Litigation, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975). Judge Muecke's service as the transferee judge will thus best utilize judicial resources while enhancing the just and expeditious termination of all actions. Additionally, a related state court antitrust action is pending in Arizona which can be coordinated with the federal proceedings there. The possibility of promoting this state/federal coordination is another factor favoring the selection of the District of Arizona as the transferee forum. See In re Bomb Disaster at Roseville, California, on April 28, 1973, 399 F. Supp. 1400, 1403 (J.P.M.L. 1975). We note also that Phoenix is well served by air and other means of transportation. And witnesses can still expect to be deposed near where they reside. See Fed.R.Civ.P. 45(d)(2).

Furthermore, we see no reason to delay our decision in this matter until the addition of other districts in which related actions are pending. While it is true that we have been reluctant to select as a transferee forum a district in which no related action is pending, see, e.g.,

<u>In re Air Crash Disaster Near Papeete, Tahiti</u>, 397 F. Supp. 886, 887 (J.P.M.L. 1975), the source of our traditional restraint is not jurisdictional. In appropriate circumstances we would order transfer of a group of actions to a district in which none of the constituent actions is pending.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action listed on the following Schedule A and pending in the Central District of California be, and the same hereby is, transferred to the District of Arizona and, with the consent of that court, assigned to the Honorable C.A. Muecke for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending in that district.

Schedule A                                                                DOCKET NO. 296

## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona v. Portland Cement Assn., et al. | Civil Action No. Civ 76-672-Phx-CAM |
| York Concrete Co., et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-914-Phx-CAM |
| Mesa Apartment Assoc., etc., et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-769-Phx-CAM |
| Rubenstein Development Co., et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-710-Phx-CAM |
| Bill Carson, et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-680-Phx-CAM |
| Woolridge Construction Co. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-913-Phx-CAM |
| Ariz. Slump Block, Inc. v. Arizona Portland Cement Co. | Civil Action No. Civ 76-488-Phx-CAM |
| Singer Housing Co., et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-827-Phx-CAM |
| Ora B. Hopper & Son, Inc. Construction & Development v. Amcord, Inc., et al. | Civil Action No. Civ 76-839-Phx-CAM |
| State of Colorado v. Portland Cement Assn., et al. | Civil Action No. Civ 76-929-Phx-CAM |
| The Leavell Co., et al. v. Portland Cement Assn., et al. | Civil Action No. Div 76-814-Phx-CAM |
| Katterjohn, Inc., et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-854-Phx-CAM |
| Picou's Builders Supply, Inc. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-926-Phx-CAM |
| Fred Bandas & Sons, Inc., et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-855-Phx-CAM |
| Globe Building Materials Co. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-293-Phx-CAM |
| Hechinger Co. v. Portland Cement Assn., et al. | Civil Action No. Civ 76-853-Phx-CAM |

## DISTRICT OF ARIZONA - continued

| | |
|---|---|
| Public Storage, Inc., et al. v. Portland Cement Assn., et al. | Civil Action No. Civ 77-48-Phx-CAM |
| City of Austin v. Portland Cement Assn., et al. | Civil Action No. Civ-77-54-Phx-CAM |
| Vincent S. Perry, et al. v. Alpha Portland Ind., et al. | Civil Action No. Civ 77-49-Phx-CAM |
| State of Oregon v. Portland Cement Assn., et al. | Civil Action No. Civ 77-56-Phx-CAM |

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The State of California, etc. v. Portland Cement Assn., et al. | Civil Action No. CV76-4073-FW |

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

FEB 28 1979

IN RE CEMENT AND CONCRETE ) DOCKET NO. 296
ANTITRUST LITIGATION )

State of Missouri v. Portland Cement Association, et al., )
W. D. Missouri, C. A. No. 78-4192-CV-C )
State of Utah v. Portland Cement Association, et al., )
D. Utah, C. A. No. C78-0429 )
State of Nebraska v. Portland Cement Association, et al., )
D. Nebraska, C. A. No. CV78-L-242 )
State of New Mexico v. Portland Cement Association, et al.,)
D. New Mexico, C. A. No. CIV-78-808-C )
State of Montana v. Portland Cement Association, et al., )
D. Montana, C. A. No. CV-78-72BU )

OPINION AND ORDER

BEFORE MURRAY I. GURFEIN, CHAIRMAN, AND EDWIN A. ROBSON,
STANLEY A. WEIGEL, ANDREW A. CAFFREY, ROY W. HARPER, AND CHARLES
R. WEINER, JUDGES OF THE PANEL.

PER CURIAM

The Panel, pursuant to 28 U.S.C. §1407, previously transferred an action from the Central District of California to the District of Arizona for coordinated or consolidated pretrial proceedings with several actions pending there. In re Cement and Concrete Antitrust Litigation, 437 F. Supp. 750 (J.P.M.L. 1977). Twenty-eight actions in this docket are presently pending in the transferee district. Plaintiffs in the actions in the transferee district include a variety of purchasers of cement and cement products, including ready-mix concrete. Representation of several different classes of purchasers of cement and cement products has been sought in these actions. Included are classes comprised of specific groupings of purchasers, such as building materials dealers, general building and paving contractors, or

subcontractors engaged in the installation of floor and wall tile; and classes which are geographically defined, embracing purchasers within the states of Arizona, California, Colorado, Kansas, Oregon, or Texas, or within the entire United States. Defendants include the Portland Cement Association (PCA) (a trade group composed of over 40 major cement producers), and a number of producers of cement and cement products. The complaints in these actions charge defendants with conspiring to fix, maintain and stabilize the price of cement and cement products in violation of, inter alia, Section 1 of the Sherman Act, 15 U.S.C. §1. Several complaints allege a national conspiracy while other complaints allege conspiracies within specific states.

The five above-captioned actions (Missouri, Utah, Nebraska, New Mexico and Montana actions) have each been brought by a specific state as a class action. The states of Nebraska and Montana seek to represent all persons and entities within the respective state that have built or caused to be built any structure containing cement or cement products. The states of Missouri, Utah and New Mexico each seek to represent the named state, its various departments and agencies, and all other political subdivisions and governmental entities within the state, excluding agencies of the United States Government, that have purchased cement and cement products. Defendants include the PCA and a number of producers of cement and cement products. All defendants in these five actions have also been named as defendants in one or more

of the actions in the transferee district. The complaint in each of the five actions charges defendants and unnamed co-conspirators with conspiring to fix, maintain and stabilize the price of cement and cement products within the relevant state in violation of, inter alia, Section 1 of the Sherman Act.

Because the Missouri action appeared to share questions of fact with the actions in this litigation previously centralized in the District of Arizona, the Panel, pursuant to Rule 9, R.P.J.P.M.L., 78 F.R.D. 561, 567-68 (1978), entered an order conditionally transferring the Missouri action to the District of Arizona for inclusion in the coordinated or consolidated pretrial proceedings occurring there. Plaintiff State of Missouri and all plaintiffs in the actions in the transferee district favor transfer. All defendants in the Missouri action oppose transfer.

Pursuant to Rule 10(b), R.P.J.P.M.L., id. at 568, the Panel ordered the parties to show cause why the Utah, Nebraska, New Mexico and Montana actions should not be transferred to the District of Arizona for inclusion in the centralized pretrial proceedings. Plaintiffs in each of these four actions favor transfer. Three defendants that are named in each of the four actions oppose transfer at the present time. The other 42 defendants in the Nebraska action oppose transfer of that action at the present time.

We find that these five actions involve common questions of fact with the previously centralized actions and that transfer under Section 1407 of these five actions to the District of Arizona

for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Defendants in the Missouri action assert that the factual questions involved in the Missouri action are more limited in scope than and primarily distinct from the factual questions involved in the actions in the transferee district. Therefore, these defendants contend, the Missouri action is inappropriate for inclusion in the centralized pretrial proceedings. In addition, these defendants and the other opponents of transfer request that the Panel defer decision on the question of transfer pending the resolution of various motions to dismiss that have been filed in these five actions on grounds of improper jurisdiction or venue or of failure to state a claim on which relief may be granted.

We find these arguments unpersuasive. The national conspiracy alleged in some of the actions in the transferee district naturally encompasses the statewide conspiracy alleged in each of the present five actions, and therefore these five actions and the actions in the transferee district clearly involve many common questions of fact. As a result, discovery and other pretrial proceedings essential to development of the claims in each of the present actions will overlap discovery and other pretrial proceedings that are integral to the actions in the transferee district. Inclusion of the present five actions in the centralized pretrial proceedings is thus necessary in order to prevent duplicative

discovery, eliminate the possibility of inconsistent pretrial rulings and streamline all other pretrial proceedings. See In re Airport Car Rental Antitrust Litigation, 459 F. Supp. 1006, 1007 (J.P.M.L. 1978). In addition, the statewide classes for which representation is sought in each of these five actions are encompassed within the national class for which representation is being sought in the transferee district. Transfer is especially important to ensure consistent treatment of the class action issues. See In re Hawaiian Hotel Room Rate Antitrust Litigation, 438 F. Supp. 935, 936 (J.P.M.L. 1977).

We see no reason to defer decision on the question of transfer because of the pendency of certain motions for dismissal in these actions. These motions can be presented to and decided by the transferee court following transfer. See, e.g., In re Sinking of the Motor Vessel Ukola, ___ F. Supp. ___, ___ (J.P.M.L., filed Dec. 15, 1978)(slip opinion at 6); In re Commonwealth Oil/Tesoro Petroleum Securities Litigation, 458 F. Supp. 225, 230 (J.P.M.L. 1978).

IT IS THEREFORE ORDERED that the actions entitled State of Missouri v. Portland Cement Association, et al., W. D. Missouri, C. A. No. 78-4192-CV-C; State of Utah v. Portland Cement Association, et al., D. Utah, C. A. No. C78-0429; State of Nebraska v. Portland Cement Association, et al., D. Nebraska, C. A. No. CV78-L-242; State of New Mexico v. Portland Cement Association, et al., D. New Mexico, C. A. No. CIV-78-808-C; and State of Montana v. Portland Cement Association, et al., D. Montana, C. A. No. CV-78-72BU,

be, and the same hereby are, transferred to the District of Arizona and, with the consent of that court, assigned to the Honorable C. A. Muecke for inclusion in the coordinated or consolidated pretrial proceedings occurring there.